UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARIA ANNE BARCO,

                    Petitioner,

                                              Civil Action No. 2:22cv255
    v.                                        Criminal No. 2:20cr77

UNITED STATES OF AMERICA,

                    Respondent.

## OPINION AND ORDER

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence filed by Petitioner Maria Anne Barco ("Petitioner") pursuant to 28 U.S.C. § 2255. ECF No. 73. After reviewing the record, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to any relief. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons set forth below, Petitioner's § 2255 motion is **DISMISSED AND DENIED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

On September 9, 2020, a grand jury returned an eight-count indictment against Petitioner and one codefendant. ECF No. 1. The indictment charged Petitioner with one count of Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) & (B). Id. at 2. Not long

after, on September 30, 2020, the Court granted defense counsel's unopposed motion to continue trial, "with the informed consent of [his] client," beyond the speedy trial cut-off date.  ECF No. 29. Accordingly, trial was scheduled for February 8, 2021.  However, in January 2021, the Court entered General Order No. 2021-01, which suspended all criminal trials through February 28, 2021, due to the high number of Coronavirus Disease 2019 (COVID-19) case counts and hospitalizations across Virginia.  As a result, Petitioner's trial was rescheduled to May 10, 2021.  ECF No. 86, at 2.

On March 3, 2021, Petitioner was named in a one count Criminal Information with the lesser charge of Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B).  ECF No. 39, at 1.  Soon after, on March 5, 2021, Petitioner pled guilty, pursuant to a written plea agreement, to the single-count Criminal Information.  ECF No. 41, 42.

Prior to the Court accepting Petitioner's guilty plea, the Court conducted a detailed Rule 11 colloquy.  This colloquy included Petitioner confirming, under oath and on the record, that Petitioner's lawyer reviewed with her both "what the government ha[d] to prove for [her] to be found guilty of [the] charge [in this case]" and the evidence that her lawyer "believe[d] the government could present against [her] if this case went to trial." ECF No. 71, at 9, 12.  The Court also reviewed the elements of the

2

crime to which Petitioner was pleading guilty, including the following exchange on Count One:

> Q. All right. So, you are charged with conspiracy to manufacture, distribute, and possess with intent to distribute fentanyl, heroin, and cocaine. In order to find you guilty of that, the first thing they have to prove is that there is a conspiracy; that means that you and somebody else agreed, whether formally or informally, that you would act together to distribute this stuff, that the object of this conspiracy was to manufacture, distribute, and possess narcotics with the intent to distribute; that somebody took a step to put that conspiracy, that plan into action; that you knew about this agreement; and that you knowingly and voluntarily went into this agreement to distribute these drugs. Do you understand that?
>
> A. Yes.
>
> Q. Do you agree they could prove each of those facts?
>
> A. Yes.
>
> Q. All right. Now, you've been very cooperative, and I appreciate that. Is there anything I have asked you today that you did not understand?
>
> A. No.

ECF No. 86-1, at 23-24.

Following her plea of guilty to Count One, Petitioner was sentenced to 96 months' imprisonment. ECF No. 66; see ECF No. 62. This sentence represented a substantial downward variance from the advisory Guideline range of 135 to 168 months. ECF No. 50, at 16. Petitioner did not appeal her conviction or sentence.[1]

---

[1] Petitioner's written plea agreement contains an appeal waiver, and the Court reviewed the waiver with Petitioner at the plea hearing. ECF No. 42, at 4; ECF No. 86-1, at 20.

On June 21, 2022, Petitioner filed the instant motion, pro se, seeking relief under 28 U.S.C. § 2255. ECF No. 73. The Court ordered the Government to respond, ECF No. 75, and after obtaining a filing extension, the Government filed a brief in opposition on October 13, 2022, ECF No. 86. Petitioner's reply was received on November 7, 2022, ECF No. 89, and this matter is therefore ripe for review.

## II.   STANDARD OF REVIEW

A federal prisoner in custody may collaterally attack her sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that: (1) her sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; (2) the district court "was without jurisdiction to impose such sentence"; (3) the sentence exceeds "the maximum authorized by law"; or (4) the sentence or conviction is "otherwise subject to collateral attack." Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

While a § 2255 motion enables a petitioner to collaterally attack her sentence or conviction by initiating a new proceeding, the existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp.

2d 554, 558 (E.D. Va. 1999).   On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).   The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect."   Id. at 165-66.   For this reason, the doctrine of procedural default prevents a district court from reaching the merits of most § 2255 claims that could have been raised on direct appeal unless a petitioner can show two things: (1) "cause" excusing the failure to directly appeal the alleged error; and (2) "actual prejudice" resulting from the alleged error. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999); see United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023). Alternatively, a petitioner may overcome his default by demonstrating "actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 492-93.

However, a § 2255 petitioner need not overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion.   See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255

motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness"; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Conclusory statements are insufficient to carry a petitioner's burden. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000))).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see also Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). Satisfying the first prong of Strickland requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255

motion establish that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).

Under the second prong of Strickland, a petitioner must "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The prejudice prong is slightly modified where, as here, a petitioner challenges a conviction entered after a guilty plea; in such circumstances, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### III.   DISCUSSION

Petitioner's motion advances multiple claims grounded in her lawyer's purported failure to provide constitutionally effective assistance by: (1) advising Petitioner to waive her right to indictment; (2) advising Petitioner to waive her right to a speedy trial; and (3) failing to argue that there was "insufficient evidence to establish that [Petitioner] was involved in a criminal

7

conspiracy" as Petitioner was only an "accessory after the fact."
ECF No. 74, at 9.  Petitioner also appears to directly assert that
she did not enter a knowing and voluntary guilty plea, arguing
that she did not "possess a sufficient understanding of federal
law" at the time that the plea was entered.  Id. at 18.

### a.  Waiver of Right to Indictment

Petitioner first asserts that her attorney provided
ineffective assistance by "inform[ing] [Petitioner] that it was in
her best interest to waive her Constitutional right to an
indictment by a grand jury."  ECF No. 74, at 6.  Petitioner
further argues that due to her attorney's persistence that she
waive such right, the "Government no longer had to lawfully procure
such an indictment from the grand jury."  ECF No. 74, at 6.

As to this first challenge, Petitioner's factual assertions
are contradicted by the record, which reveals that Petitioner was
indicted by a grand jury before Petitioner's Waiver of Indictment
was entered.  See ECF No. 1.  In fact, Petitioner's Criminal
Information and Waiver of Indictment were filed six (6) months
after the Indictment was returned.  ECF No. 39, 44.  The timing of
these records therefore plainly demonstrates that, contrary to
Petitioner's assertion, the Government was not "having problems
getting a Grand Jury to indict [her]."  ECF No. 74, at 6.  Rather,
as argued by the Government, Petitioner "was indicted on a more
severe conspiracy charge," and "after [Petitioner] agreed to plead

guilty," the Government filed the Criminal Information charging her with "a version of the conspiracy count [which] carr[ied] a reduced minimum sentence." ECF No. 86, at 8. Petitioner's waiver therefore appears to have been only a matter of procedure enabling Petitioner to move forward on the less serious charge prosecuted in the Criminal Information.

Petitioner's own sworn admission at her plea allocution confirmed both that she had previously been indicted by a grand jury and was knowingly waiving indictment in favor of the Criminal Information. Specifically, Petitioner and the trial judge engaged in the following exchange:

> Q. Knowing that you have every right to insist that you be indicted by a grand jury, which, of course, you already have been, knowing that you have every right to insist on that, is it still your desire to go forward today on the criminal information?
>
> A. Yes.

ECF No. 86-1, at 6. Moreover, even at this late stage of the case, Petitioner fails to demonstrate that she was prejudiced in any way as a result of her counsel's recommendation that she waive her right to an indictment. Accordingly, for the reasons stated above, Petitioner fails to satisfy either Strickland prong with respect to her first asserted ground for relief. Petitioner's first claim for habeas relief is therefore **DENIED**.

### b.   Waiver of Speedy Trial

Petitioner next asserts that her counsel performed deficiently by insisting that Petitioner waiver her constitutional and statutory right to a speedy trial. ECF No. 74, at 8. According to the record, Petitioner was arrested on September 10, 2020, and made her initial appearance on the indictment on September 16, 2020. On September 28, 2020, Petitioner's counsel filed an unopposed motion to continue trial beyond the Speedy Trial Act cut-off date in order to have "additional time to properly prepare the case for trial." ECF No. 27. Finding that "the ends of justice served by the continence outweighed the interests of the defendants and the public in a speedy trial," the Court granted Petitioner's motion. ECF No. 29. In her instant motion, Petitioner now argues that by filing a motion to continue trial beyond the speedy trial cut-off date, her attorney gave the Government additional time to "find or fabricate some seemingly credible evidence against Barco," or to "wear down and weaken [Petitioner's] resolve to fight her case." ECF No. 74, at 8.

A criminal defendant possesses both a statutory and constitutional right to a speedy trial. Statutorily, the Speedy Trial Act requires that a defendant be tried within seventy days of the filing of the indictment or the defendant's first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). "Certain events or delays, however, are excluded from the seventy-

day time frame," including "any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." United States v. Bedford, 628 F.3d 1232, 1235 (10th Cir. 2010); 18 U.S.C. § 3161(h)(7)(A).   In addition to the statutory protection, criminal defendants are also guaranteed the right to a speedy trial under the Sixth Amendment of the United States Constitution. See United States v. Crawford, 626 F. App'x 405, 407 (4th Cir. 2015) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).

Here, Petitioner does not satisfy either prong under Strickland for proving that her counsel's client-informed request for a continuance negatively impacted her case.  Turning first to defense counsel's performance, counsel's motion for a continuance expressly stated that it was filed "with the informed consent of my client."  ECF No. 27.  Therefore, where Petitioner does not directly dispute or set forth any alternative facts that indicate anything contrary to a mutual decision between both Petitioner and her defense counsel, the Court is unable to find that Petitioner's counsel acted unreasonably or deficiently in moving for a continuance. White v. United States, No. 1:06cr2, 2015 WL 7283107, at *4 (E.D. Va. Nov. 16, 2015).

Moreover, as this Court acknowledged in its pandemic-related General Order No. 2021-01, limited operations and in-person hearings were key components to this District's staged response to the COVID-19 "in order to protect court employees and staff, litigators, counsel, other court users, and members of the public." As it pertained to the execution of criminal jury trials in both 2020 and 2021, this Court also noted that: "the difficult question that presents itself to the Court is not merely whether it is 'possible' to conduct a criminal jury trial, but rather, whether a fair trial that provides a criminal defendant all the necessary constitutional protections can be conducted based on the current state of the pandemic." Id. at 11. Thus, in a period where the Court's communications with the U.S. Attorney's Office, the Federal Public Defenders, and private defense attorneys revealed "shared concerns about the practical ability of the Court to effectively seat a jury" and "issues with witness availability in light of" the ongoing pandemic were likely to continue, the Court is unpersuaded by Petitioner's argument that counsel's decision to continue trial was anything other than an informed strategic decision to obtain more preparation time and to ensure that Petitioner received a fair trial. General Order No. 2020-06 (Mar. 23, 2020); see also United States v. Dehlinger, 740 F.3d 315, 325 (4th Cir. 2014) ("The Sixth Amendment does not provide a basis for disappointed clients to launch after-the-fact attacks on the

12

objectively reasonable strategic decisions of their trial attorneys.").

Finally, even if the performance of Petitioner's counsel was deficient, Petitioner has not demonstrated any resulting prejudice, as is required under the second prong of Strickland. If anything, the record suggests the opposite conclusion – that the continuation of trial resulted in a beneficial delay where ultimately, the parties negotiated a more favorable deal for Petitioner. As mentioned above, by opting to plead guilty to the single-count Criminal Information, Petitioner faced a five-year mandatory minimum rather than the ten-year mandatory minimum required for the more serious conspiracy charge listed in the indictment. Thus, contrary to Petitioner's speculation that the only purpose counsel's motion served "was to give the Government more time to [] [f]ind or fabricate some seemingly credible evidence against [Petitioner]," the facts suggest that the delay in trial actually worked to Petitioner's advantage. Additionally, Petitioner does not identify any evidence that the Government purportedly "found or fabricated" during the time leading up to her guilty plea. Although Petitioner was ultimately sentenced to 96 months imprisonment, such sentence cannot be attributed to defense counsel's request for additional time to prepare. Therefore, in light of the above, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice

stemming from her lawyer's strategic decision to move to continue trial.  Accordingly, Petitioner's second claim for habeas relief is **DENIED**.

### c.   Failure to Argue "Insufficient Evidence"

Petitioner next contends that her counsel performed deficiently by "failing to argue that there existed insufficient evidence to establish" that Petitioner entered into an agreement to manufacture, distribute, or posses with intent to distribute controlled substances. ECF No. 74, at 9. Petitioner asserts that, at most, the facts of this case prove that she was an "accessory after the fact," and therefore, counsel should have advanced such argument. Id. at 12, 16.

After carefully reviewing the record, the Court finds that defense counsel did not perform deficiently in failing to argue that there was insufficient evidence to support Petitioner's conviction.  First, Petitioner's post-plea assertion that there was insufficient evidence to prove a drug trafficking conspiracy is belied by Petitioner's own sworn admissions.  In conjunction with her plea agreement, Petitioner signed the Statement of Facts describing some of the facts that the Government would have proven at trial in the absence of her plea, ECF No. 43, and confirmed under oath that the Statement of Facts is true, ECF No. 86-1, at 10.  In the stipulated Statement of Facts, Petitioner admits that if she had proceeded to trial, the United States would have proven

14

beyond a reasonable doubt that she "was a member of a drug-trafficking conspiracy that operated in Norfolk and Virginia Beach," and that she "conspired with codefendant [] <u>Jermaine Levar SUGGS and others</u> to purchase, manufacture, distribute, and possess with intent to manufacture and distribute fentanyl, heroin, and cocaine." ECF No. 43 ¶ 1 (emphasis added). Petitioner further admitted that she "helped SUGGS receive, store, package, and distribute" various drugs at the residence where the Petitioner and the codefendant resided together. <u>Id.</u> ¶ 2.

Additionally, as outlined in the Statement of Facts, before Petitioner's codefendant was arrested, he sent Petitioner a text message, "asking her to remove contraband" from their shared residence. <u>Id.</u> ¶ 3. Shortly thereafter, "investigators watched [Petitioner] exit the [] residence with a green bag in her hands and enter" a vehicle before law enforcement arrested Petitioner in her front yard, and retrieved "$3,000 in drugs proceeds, a handgun, and a cell phone" from her purse. <u>Id.</u> ¶ 4. After Petitioner waived her Miranda rights, she thereafter "admitted to investigators that SUGGS had directed her to remove contraband from the [] residence and that she had confirmed that the green bag contained contraband before removing it from the residence and putting it in the [] SUV." <u>Id.</u> ¶ 7. Subsequent searches of the vehicle and the residence led to the seizure of nearly two kilograms of cocaine, a quantity of heroin/fentanyl/marijuana,

multiple firearms, cellphones, and drug packaging materials.  Id.
¶¶ 5-6.  As such, because Petitioner's post-conviction effort to
deny the existence of an "agreement" with Suggs (or others)
directly conflicts with her prior sworn statements made at the
time of her guilty plea, her argument that her counsel performed
deficiently in failing to argue that there was insufficient
evidence to support a conspiracy conviction is rejected.[2]  See
United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005)
("[I]n the absence of extraordinary circumstances, the truth of
sworn statements made during a Rule 11 colloquy is conclusively
established, and a district court should, without holding an
evidentiary hearing, dismiss any § 2255 motion that necessarily
relies on allegations that contradict the sworn statements.").[3]

In light of her prior sworn admissions, Petitioner similarly
fails to satisfy the second prong of the Strickland test as to her
newly asserted allegation since there is not a "reasonable
probability that, but for counsel's errors, [s]he would not have

---

[2] The cases cited by Petitioner in support of her contention that she was
an "accessory after the fact" do not alter this Court's analysis.

[3] Moreover, the Court notes that, based on the record, there was not an
opportunity for defense counsel to advance such argument.  Notably, prior
to Petitioner's guilty plea, Petitioner and her counsel had only come before
the Court once for her Arraignment and Detention Hearing – both of which
are the inappropriate time for the advancement of the above-mentioned
argument. Therefore, it appears that the only forum for this argument would
have been during a trial on the original, more serious charge listed in the
indictment.  Petitioner's motion falls far short of demonstrating that it
would have been reasonable to forgo the beneficial plea agreement and proceed
to trial.

pled guilty and would have insisted on going to trial." Lockhart, 474 U.S. at 59.  Notably, to the extent it is proper for the Court to look behind Petitioner's prior sworn statements to determine whether defense counsel misled Petitioner into admitting her guilt in the absence of sufficient evidence to prove a conspiratorial agreement, further exploration into the record serves only to confirm the existence of a conspiracy. Specifically, Petitioner's boyfriend and codefendant Suggs pled guilty to the same drug trafficking conspiracy and admitted under oath that he participated with Petitioner in the drug conspiracy charged in Count One of the Indictment.  Among other things, Suggs admitted in his own sworn Statement of Facts that: (1) the conspiracy extended beyond Petitioner's efforts to hide evidence from police on the date of Suggs's arrest; (2) the conspiracy spanned "[f]rom 2019 to January 10, 2020"; and (3) the conspiracy consisted of "receiv[ing], stor[ing], package[ing], and distribut[ing]" various drugs and firearms in a residence that he shared with his girlfriend, Petitioner.  ECF No. 36 ¶¶ 1-2.  These admissions from Petitioner's codefendant, as well as the quantity of cocaine seized from the shared residence on the date of Petitioner's arrest, underscore the lack of merit of her § 2255 claim.  Accordingly, neither the record, nor Petitioner's allegations, convinces the Court that there was a reasonable "likelihood of a result more

favorable to [Petitioner]" if she had gone to trial on the original conspiracy count in the indictment. <u>Strickland</u>, 466 U.S. at 695.

In sum, contrary to Petitioner's newly advanced claim relying on the purported absence of a conspiratorial agreement, both she and her codefendant's sworn admissions demonstrate the existence of a § 846 conspiracy. Petitioner therefore fails to demonstrate that her counsel provided constitutionally deficient advice or that Petitioner suffered resulting prejudice. Petitioner's third claim for habeas relief is therefore **DENIED**.

### d.   Invalid Guilty Plea

Petitioner's final claim is a direct challenge to her guilty plea, arguing that the plea was unknowing and involuntary because Petitioner did not understand that her conduct did not satisfy the elements of the charged offense. Specifically, Petitioner contends that her due process rights were violated since: (1) she did not "possess a sufficient understanding of federal law in relation to the specific facts of her case"; (2) she was unaware that "her conduct did not constitute the offense for which she pled guilty"; and (3) "there was an inadequate factual basis to support such a plea." ECF No. 74, at 17.

As an initial matter, the Government argues that Petitioner's direct challenge to her guilty plea is procedurally defaulted since such claim was neither raised before the district court or on direct appeal. ECF No. 86, at 12-13. The Court agrees, and

further notes that Petitioner has not presented any argument to overcome her procedural default. See United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012) (indicating that the burden to overcome a procedural default rests with the "person attacking his conviction"). Accordingly, Petitioner's final claim is **DISMISSED as procedurally defaulted.**

Alternatively, even if Petitioner were to overcome this procedural infirmity, the claim nonetheless fails on the merits for the same reasons discussed earlier in this opinion. In her motion, Petitioner asserts that "she would have never pled guilty to the § 846 count . . . [had she understood] that her criminal conduct did not constitute said offense." ECF No. 74, at 18. However, for the reasons discussed in the preceding section, Petitioner fails to advance a colorable claim that she did not participate in a drug trafficking conspiracy. Stated another way, based on Petitioner's admissions, it is her current motion that reflects a misunderstanding of the law, because her agreement, for example, to help Suggs package drugs is legally sufficient to support her conspiracy conviction. Accordingly, because Petitioner's due process claim is predicated on the alleged absence of a conspiratorial agreement – an argument this Court has found meritless – the Court is similarly unpersuaded by Petitioner's argument that her guilty plea was unknowingly entered due to a

lack of knowledge of the federal law relevant to the facts of her case.

Moreover, similar to Petitioner's other claims, her direct challenge to her guilty plea is contradicted by the record. Notably, during the Rule 11 hearing, Petitioner attested, among other things, that: (1) she reviewed the Criminal Information with her attorney; (2) she "understood the charges against her"; (3) she was "fully satisfied with the services of her attorney; (4) she "understood the consequences of pleading guilty"; and (5) she "was pleading guilty because she was, in fact, guilty" of the charged offense. United States v. Alston, No. 19-4070, 2022 WL 313843, at *3 (4th Cir. Feb. 2, 2022); see ECF No. 86-1, at 8-14. Petitioner further confirmed that she understood that a "conspiracy" required the Government to prove that she worked with her codefendant "to distribute some drugs" and that she had in fact engaged in such conduct. ECF No. 76, at 10, 23. With all things considered, Petitioner fails to demonstrate that her guilty plea was unknowing and/or involuntary. As such, the Court would not find that Petitioner's due process rights were violated even if this claim for habeas relief was properly before this Court, and therefore, Petitioner's final claim is alternatively **DENIED**.

### IV.   CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DISMISSED AND DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and counsel of record for the Government.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 19 , 2023

21